UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RONALD BALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 1:13-cv-00643-SEB-TAB |
| THE CITY OF MUNCIE, | ) | |
| DENNIS TYLER, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

This cause is before the Court on Defendants' Motion to Dismiss, filed on September 19, 2013, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Ronald Ball has brought claims against Defendants, the City of Muncie and Dennis Tyler, alleging they deprived him of his First Amendment rights in violation of 42 U.S.C. § 1983 when he was terminated from his employment solely because of his political affiliation. Amend. Compl. ¶ 30.

Defendants claim that the Amended Complaint is defective in the following ways: (1) the claims against Dennis Tyler in his official capacity and against the City of Muncie are duplicative; (2) Plaintiff has failed to state a plausible *Monell* claim against the City; and (3) the position Plaintiff occupied prior to his separation from employment was not one entitled to protection under the First Amendment. For the reasons detailed in this entry, we GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss.

1

**Factual Background**

Plaintiff Ronald Ball was an employee of the City of Muncie Street Department ("Street Department") from 1999 to 2012. Pl.'s Amend. Compl. ¶¶ 7, 25. Ball began his employment with the Street Department as a commercial driver, but eventually achieved the position of Street Foreman in 2005—the position he held until his termination on January 3, 2012. *Id.* at ¶¶ 7, 8. According to the official job description, the Street Foreman "is responsible for working and assisting with directing department operations." Pl.'s Amend. Compl. Ex. A, at 1. Specifically, the Street Foreman's essential job functions include: (1) supervising, coordinating and managing all street department crews; (2) receiving a list of work priorities from the Street Superintendent and scheduling work operation of fixing chuckholes, picking up leaves, and removing snow from streets; (3) dispatching all work crews on a daily basis according to instructions from the Street Superintendent; and (4) receiving and investigating citizen complaint from dispatch regarding City streets and related areas. *Id.* The Street Foreman is also responsible for assisting in maintaining inventory of department equipment, materials, and supplies, and submitting recommendations to the Street Superintendent as needed. *Id.*

Plaintiff claims that, as Street Foreman, he did not have the authority, discretion, or responsibility to decide which potholes were filled first or which streets were plowed first during inclement weather, and he did not have authority to hire or fire any Street Department employees. Amend. Compl. ¶¶ 11–12, 15. He insists that potholes were filled in the exact order the department received complaints by citizens via telephone and website, *Id.* at ¶ 11, and the decisions regarding snowplowing were based on a pre-existing system designed in 1999. *Id.* at ¶ 12. The routes of the snowplow drivers were decided by the Street Superintendent. *Id.* Additionally, Plaintiff denies that he had authority to decide which equipment, materials, and

supplies were purchased for the department; rather, he would report his inventory to the Street Superintendent, who would then decide which materials, equipment, and supplies to purchase. *Id.* at ¶ 14. Plaintiff maintains that throughout his employment he exercised no discretion in formulating policies or procedures within the Street Department; instead, he received all of his instructions and delegations of duty from the Street Superintendent. *Id.* at ¶ 16.

Prior to accepting the Street Foreman position, Plaintiff was informed that the position was not a politically appointed one and the any political change in the administration would have no effect on whether he retained the job. *Id.* at ¶ 17. From 1999 to 2011, the Republican Party controlled the mayor's office in the City of Muncie, but in November of 2011, the Democratic opponent, Dennis Tyler, defeated the incumbent Republican Mayor, Sharon McShurley. *Id.* at ¶¶ 18–19. On November 30, 2011, Mayor-Elect Tyler sent Plaintiff a letter explaining that he would not be reappointed as the "Chief of Street Maintenance." *Id.* at ¶ 20. On December 20, 2011, Mayor McShurley sent Mayor-Elect Tyler a letter explaining that Plaintiff was in fact the Street Foreman, not the Chief of Street Maintenance, and that the Street Foreman was not an appointed position. *Id.* at ¶ 21, Pl.'s Amend. Compl. Ex. B. One week later, Plaintiff received a letter from the soon-to-be Superintendent of Public Works, Duke Campbell, offering Plaintiff the position of truck driver and reassigning him from Street Foreman. Pl.'s Amend. Compl. ¶ 22. On January, 3, 2012, Plaintiff was informed by Mr. Campbell that if he did not accept the position of truck driver, he would be terminated from his employment. *Id.* at ¶ 24. After Plaintiff refused to voluntarily accept the truck driver position—feeling he was entitled to remain in his current position as Street Foreman—Plaintiff was terminated on January 3, 2012. *Id.* at ¶ 25.

Plaintiff filed suit more than a year later, on April 19, 2013, naming Dennis Tyler, in both his individual and official capacities, and the City of Muncie as defendants. Plaintiff has asserted

3

a claim under 42 U.S.C. § 1983 for deprivation of his First Amendment rights, contending that he was unconstitutionally terminated on January 3, 2012, due to his political affiliation. *Id.* at ¶¶ 23–24.

On September 19, 2013, Defendants filed a Renewed Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of all claims asserted against them. Therein Defendants argue that the Street Foreman position is not entitled to First Amendment Protection because the nature of the job makes political loyalty an appropriate qualification for performing the job effectively. The Defendants also argue that the claims against the City of Muncie must be dismissed because they are duplicative of the official-capacity claims against Tyler and because Plaintiff has made no plausible claim for municipal liability under *Monell*.

## **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2008) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint is sufficient if it gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank,* 614 F.3d 400, 404 (7th Cir. 2010). On the other hand, a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago,* 631 F.3d 823 (7th Cir. 2011). When reviewing a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). "[O]nce a claim has been stated adequately, it may be supported

by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563. Documents attached to the complaint become part of it for all intents and purposes and may be considered by the court as part of the pleadings. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

## Discussion

### I. Duplicative Claims

At the outset, we address Defendants' request for dismissal on grounds that the claims are duplicative. Plaintiff has named Dennis Tyler as a defendant in his individual and official capacities as well as separately naming the City of Muncie as a defendant. As Defendants have correctly noted, the claims against Tyler in his official capacity as Mayor of Muncie and the claims against the City of Muncie itself are redundant. A claim against an individual in his official capacity is "in all respects other than name, to be treated as a suit against the [municipal] entity ... for the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985). Accordingly, because the City of Muncie is the real party in interest here, the official-capacity claims against Dennis Tyler shall be dismissed as duplicative of the claims against the City of Muncie. *See Bratton v. Town of Fortville*, 2010 WL 2291853, at *5 (S.D. Ind. June 2, 2010). As such, the City's motion to dismiss with respect to Plaintiff's Section 1983 claim against Tyler individually, is GRANTED**.**

### II. Plausible Claim for Relief Against the City of Muncie

We evaluate Plaintiff's Section 1983 municipal liability claim against the City of Muncie under the framework established by *Monell v. Department of Social Services.,*436 U.S. 658 (1978), and its progeny. To prevail, Plaintiff must produce evidence of (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not

authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (citing *Phelan v. Cook Cnty.,* 463 F.3d 773, 789 (7th Cir. 2006)). The determination of whether a person has policymaking authority is a question of state law, and is to be decided by the court. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988); *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.,* 183 F.3d 734, 737 (7th Cir.1999).

Plaintiff contends that Mayor Dennis Tyler, as the chief executive for the City of Muncie, possessed final policymaking authority and caused the constitutional injury by terminating Plaintiff via his November 20, 2011 letter. Pl.'s Resp. at 8. This allegation fulfills the third *Monell* criterion for establishing municipal liability. *See Lewis*, 496 F.3d at 656.

Muncie is a second-class city under the laws of the State of Indiana, and as such it has both a legislative body, a city council, and an executive, the mayor. *See* Ind.Code § 36–4–4–1 to 36–4–4–4, § 36–4–5–1 to 5–4; *see also Warner v. City of Terre Haute*, 30 F. Supp. 2d 1107, 1122 (S.D. Ind. 1998). Under Indiana statutes, the executive is granted "[a]ll powers and duties of a city that are executive or administrative in nature." Ind. Code Ann. § 36–4–4–3. The executive is also charged with supervising subordinate officers and filling vacancies in city offices when required. *Id*. § 36–4–5–3.

Thus, Plaintiff has pled sufficient facts to state a plausible *Monell* claim that Mayor Dennis Tyler, as the final policymaker, acting on behalf of the city, committed the alleged constitutional violation. As such, the City's motion to dismiss with respect to Plaintiff's § 1983 claim is DENIED**.**

### III. The Street Foreman's First Amendment Protections

Generally speaking, discharging a public employee based on political patronage violates the First Amendment. *Embry v. Calumet City, Ill.*, 701 F.3d 231, 235 (7th Cir. 2012) (citing *Elrod v. Burns*, 427 U.S. 347, 360 (1976)). However, "the First Amendment does not categorically limit the ability of elected leaders from surrounding themselves with loyal, like-minded subordinates." *Thompson v. Ill. Dept. of Prof'l Reg.*, 300 F.3d 750, 755–56 (7th Cir. 2002). Certain positions require a "heightened need for trust and confidence" that the employee "will exercise their discretion in a manner consistent with their shared political agenda." *Embry*, 701 F.3d at 235 (quoting *Bonds v. Milwaukee Cnty.*, 207 F.3d 969, 977 (7th Cir. 2000)). If the nature of the public employee's job makes political loyalty a valid qualification for effective performance of his position, that employee may be terminated on the basis of his political affiliation. *Embry*, 701 F.3d at 235–36; *Branti v. Finkel*, 445 U.S. 507, 518 (1980).

We must therefore determine whether the "hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Selch v. Letts*, 5 F.3d 1040, 1043 (7th Cir. 1993). Defendant bears the burden of establishing that the position of Street Foreman is a confidential or policymaking position which would justify politically motivated employment actions. *Bagiensky v. Madison Cnty.*, 484 F. Supp. 2d 938, 947 (S.D. Ind. 2007) (citing *Thompson*, 300 F.3d at 756)).

To determine whether political loyalty is a valid qualification, we consider whether the employee's position entailed "the making of policy and thus the exercise of political judgment." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007) (quoting *Kiddy—Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005)). We also consider the degree of discretion and responsibility

exercised in the position by examining the official job description for the position. *Selch*, 5 F.3d at 1044–45. We look to the "powers inherent in a given office, rather than the actual functions the occupant of that office performed." *Bagiensky*, 484 F. Supp. 2d at 949. If an officeholder performs fewer or less important functions than usually attended to his position, he may still be terminated based on political affiliation if his position inherently encompasses policymaking powers, even if the employee never actually exercises those powers. *Embry,* 701 F.3d at 236. We look past the official job description only where the plaintiff demonstrates systematic unreliability. *Moss*, 473 F.3d at 698.

However, "the use of buzz words such as 'formulates policies,' 'broad latitude' and 'substantial independent judgment' in a position description does not transform professional or technical judgment into political judgment." *Id.* at 699. Moreover, if Plaintiff alleges that there is nothing in the job duties of the position that makes political considerations an appropriate requisite, then the position description alone may not refute this allegation conclusively if it raises and fails to answer questions as to the judgment and discretion exercised by the Street Foreman. *Id.*

"Almost all jobs in government above the lowest level require the holder of the job to exercise at least a modicum of discretion." *Riley*, 425 F.3d. at 359. The greater the degree of discretion inherent in an employee's position, the more difficult it becomes for the state to discharge the employee for insubordination, despite the fact that the employee's performance frustrates the implementation of the administration's policies. *Selch*, 5 F.3d at 1043. Likewise, as an employee's level of responsibility increases, so does his ability to obstruct the implementation of policy. *Id.*

In prior cases, the Seventh Circuit has held that political affiliation can be an appropriate requirement for various positions within state and local highway departments, reasoning that "the successful implementation of policy in the area of highway maintenance [will] likely have substantial effect on the public's perception of the…administration." *Selch*, 5 F.3d at 1046.

In *Selch v. Letts*, 5 F.3d at 1047, the court found that a subdistrict superintendent for Indiana's Department of Highways was exempt from First Amendment political protection. According to the official job description, the subdistrict superintendent "oversaw the maintenance and repair program for state highways, buildings and ground, and equipment in the subdistrict." *Id.* at 1044. In particular, the description charged the subdistrict superintendent with: (1) planning the annual workload and determining resource requirements based upon that plan; (2) investigating and taking corrective action on complaints and information requests from the general public; and (3) providing personal supervision, personnel, and equipment during emergencies, such as snow and ice removal, detours, accidents, and road repairs, etc. *Id.* at 1044–45.

In practice, the subdistrict superintendent in *Selch* was responsible for the direction and coordination of all maintenance activities relating to over 800 miles of state highway, which included the management of over sixty employees and a $1 million budget. *Id.* at 1044. Additionally, he would receive fifteen to twenty phone calls per day from public officials and citizens and would decide where and when the work was to be completed. *Id.*

The Seventh Circuit ruled that the subdistrict superintendent was a critical and highly visible representative of the state who was required to exercise discretion in meeting the needs of public officials and a large number of the electorate. *Id.* at 1047. Therefore, "in light of the

significant amount of responsibility involved and the ability to threaten the goals of the in-party, political affiliation was an appropriate requirement for the subdistrict superintendent position." *Id.* at 1043.

Similarly, in 2006, the Seventh Circuit found that the Illinois Department of Transportation's job description for the Bureau Chief of Accounting and Auditing granted broad discretion and authority to the officeholder, making a politically motivated discharge justifiable. *Allen v. Martin*, 460 F.3d 393, 945 (7th Cir. 2006). The Bureau Chief was responsible for "establishing fiscal control procedures, directing internal and external audits, and informing management of possible problems in expenditures or fiscal agreements." *Id.* The position also oversaw "the formulation of audit policies, procedures, and special examinations." *Id.* The court found that the effective implementation of these policies had a "great impact on the administration's public reputation;" therefore, the position was exempt from First Amendment protection from politically based employment decisions. *Id.*

The Seventh Circuit again concluded in 2012 that the Commissioner of Streets and Alleys for the City of Calumet was a "policymaking job," thereby making party allegiance an appropriate job qualification. *Embry v. City of Calumet, Ill.,* 701 F.3d 231, 236 (7th. Cir. 2012). The commissioner planned for and oversaw construction and repair of the city's public ways, supervised forty employees, and managed the department's $ 4 million budget. *Id.* In addition to implementing policy, the Commissioner also met with the mayor and other department heads to develop new policies for improving city services. *Id.* Further, the position was filled by a mayoral appointment and ratified by the city council for annual terms. *Id* at 237.

Our court has also found political affiliation to be an appropriate qualification for certain positions in local highway departments. In *Bageinski v. Madison County*, 484 F. Supp. 2d 938, 950 (S.D. Ind. 2007), we held that the position description for Superintendent of County Highways demonstrated that is was, "without a doubt, a 'policymaking' position." The job description included these functions: (1) plan, assign, and direct manpower and material resources to maintain all county roads, right-of-way, and related areas in a clean manner and to ensure the safety of users during routine and emergency circumstances; (2) evaluate equipment, maintain an inventory of supplies, and recommend purchases of equipment and supplies to the county commissioners; (3) formulate, prepare, and submit the department's budget and administer it after approval; (4) oversee the hiring, training, discipline and evaluation of staff; (5) receive and investigate county road complaints from citizens, and initiate appropriate action to resolve valid complaints. *Id.* at 949. On this basis, we found that the superintendent was "required to exercise independent judgment in making decisions and recommendations to oversee and direct the operations of the County Highway Department." *Id.*

However, not all state and local transportation officials are exempt from First Amendment protections, "[f]or while a great deal of responsibility and the ability to exercise discretion go a long way to show that the position is exempt from First Amendment protection, not all such positions require a loyal political affiliation." *Selch*, 5 F.3d at 1044.

In *Moss v. Martin*, 473 F.3d 694, 699 (7th Cir. 2007), the Seventh Circuit concluded that political loyalty was not a valid qualification for the Illinois Department of Transportation's Chief of Highway Sign Shop on the defendant's motion for judgment on the pleadings. According to the official position description, the Chief of the Highway Sign Shop had the following responsibilities: (1) administering the Highway Sign Shop Section of the Bureau of

Operations; (2) formulating and implementing policies, procedures, programs, and operational concepts for maintenance and rehabilitation of the department's extensive sign and raised pavement marker systems throughout the state; (3) directing the manufacture and distribution of all standard highway signs and directing the fabrication and installation of overlay panels for rehabilitation of the statewide freeway sign network; and (4) maintaining the department's comprehensive raised pavement marker system in all highway districts and supervising a complete inventory, accounting, and budgetary system to administer a specific budget allocation for support of section activities. *Id.* at 697.

However, the Court made clear that "[t]he use of buzz words such as 'formulates policies,' 'broad latitude,' and 'substantial independent judgment' in a position description, do not transform professional or technical judgment into political judgment." *Id.* at 699.

In fact, the Chief of Highway Sign Shop in *Moss* supervised approximately five employees directly and twenty employees indirectly in addition to managing a budget of approximately $3.7 million in annual operating costs. *Id.* The Chief reported directly to the Engineer of Operations, but also maintained contact with the District Engineers, Traffic Engineers, and Traffic Operations personnel. *Id.* He also had contact with the Department of Corrections, representatives of other states, governmental agencies, research organizations, private sign fabricators, suppliers of raw materials and installation equipment, and contractors. *Id.* at 697.

The Seventh Circuit in *Moss*, however, focused on what was unknown about the position. For example, the Court did not know what policies the Chief implemented, what the Chief's salary was, what amount of contact the Chief had with public officials or citizens regarding

12

signs, or whether the Chief had the power to enter into contracts. *Id.* at 699–70. The court also emphasized that the Chief did not decide what signs were erected or where or when signs were installed, and he did not oversee the crews that placed the signs. *Id.* at 700. This lack of information concerning the Chief's position taken together with the facts alleged in the complaint led the Court to conclude that the official position description alone did not refute the plaintiff's allegation conclusively; therefore the Court could not conclude that the position was exempt from First Amendment protection for purposes of the defendant's motion for judgment on the pleadings. *Id.* at 699.

The same is true here. The City of Muncie's job description for Street Foreman does not by itself conclusively refute the facts alleged in Plaintiff's complaint.[1] Viewing the allegations in the light most favorable to Plaintiff, we cannot conclude as matter of law that political affiliation is an appropriate or necessary requirement for the position of Street Foreman.

First, we recognize, as the Court stated in *Riley v. Blagojevich*, that "[a]lmost all jobs in government above the lowest level require the holder of the job to exercise at least a modicum of discretion." 425 F.3d. at 359. This is true for Muncie's Street Foreman; however, it is the level of responsibility and the degree of discretion inherent in his position that is determinative of his First Amendment protections. *Selch*, 5 F.3d at 1044–45.

A careful review of the Street Foreman's job description reveals that the he is charged with the supervision, coordination, and management of "all street department crews." Amend. Compl. Ex. A, at 1. Supervisory responsibilities are often an important characteristic of positions that are exempt from First Amendment protection. *See e.g., Selch*, 5 F.3d. at 1044 (finding the

---

[1] Defendant concedes that the factual assertions made by Plaintiff in his amended complaint are "not necessarily at odds" with the official job description's list of essential functions. Def.'s Br. at 8.

13

supervisor of over sixty employees exempt from protection); *Embry,* 701 F.3d at 236 (finding the supervisor of forty employees exempt from protection). However, here we have been informed as to the number of employees who performed under the Street Foreman's supervision. *Cf. Moss*, 473 F.3d at 697 (declining to find the direct supervisor of five employees and indirect supervisor of twenty employees exempt from protection). Also, we do not know enough details of his supervisory role. For example, we do not know if the Street Foreman is responsible for the discipline and evaluation of his subordinates, though we do know that the Street Foreman's responsibilities did not include the authority to hire or fire employees. Pl.'s Amend. Compl. ¶ 15; *cf. Bagiensky*, 484 F. Supp. 2d at 949 (exempted official who oversaw the hiring, training, discipline and evaluation of staff).

The Street Foreman also has not been vested with certain fiscal responsibilities compared to other exempt transportation officials. Unlike the subdistrict superintendent who managed a $1 million dollar budget in *Selch,* 5 F.3d at 1044; the Commissioner of Streets and Alleys who managed a $4 million budget in *Embry*, 701 F. 3d. at 236; the Chief of Highway Sign Shop who managed a $3.7 million budget in *Moss*, 473 F.3d at 697; and the Superintendent of County Highways who formulated, prepared, and administered the department's budget in *Bagiensky*, 484 F. Supp. 2d at 949, the Street Foreman in this case has no budgetary responsibilities. Amend. Compl. Ex. A, at 1. Moreover, although Plaintiff was to "assist in maintaining inventory the department's equipment, material and supplies," he did not have authority or responsibility to purchase any items for the department. Amend. Compl. ¶ 14.

One responsibility the Street Foreman did possess was to "receive and investigate citizen complaints from dispatch regarding city streets and related areas." Pl.'s Amend. Compl. Ex. A, at 1. Such interaction with the public was highlighted in *Selch* and *Bagiensky* as a responsibility

that translated into the employee being a "highly visible representative[s] of the state." *Selch*, 5 F.3d at 1047. However, in *Selch,* after receiving and investigating complaints, the official had discretion to decide where and when the repairs were to be completed. *Id.* at 1044. Likewise, in *Bagiensky*, after receiving the complaints, the official would "initiate appropriate action to resolve valid complaints." 484 F. Supp. 2d at 949. This second step was deemed crucial in these cases because those officials, unlike a receptionist, were required to exercise independent judgment and discretion in meeting the needs of the public. *Id.* Muncie's Street Foreman has not been vested with this type of discretion. His job description does not require him to go beyond receiving and investigating complaints, and as alleged by Plaintiff, "any decisions regarding citizen's complaints were made by the Street Superintendent, the mayor or the deputy mayor of Muncie." Amend. Compl. ¶ 13, Ex. A, at 1.

In fact, based on the facts before us, it is clear that the Street Foreman lacked many of the discretionary responsibilities possessed by other exempt transportation officials. Unlike the subdistrict superintendent who was charged with *planning* the annual workload for his subdistrict in *Selch,* 5 F.3d at 1044; the Commissioner of Streets and Alleys who *planned for* and oversaw construction and repair of the city's public ways in *Embry*, 701 F.3d at 236; and the Superintendent of County Highways who *planned*, assigned, and directed manpower and material resources to maintain all county roads in *Bagiensky*, 484 F. Supp. 2d at 949;  Muncie's Street Foreman was not responsible for any planning; rather, he "receive[d] a list of priorities from Street Superintendent." Amend. Compl. Ex. A, at 1. Plaintiff asserts here that he lacked authority to determine the order in which the potholes were filled or which city streets were plowed and in what order. Amend. Compl ¶¶ 11–12. Even though the Street Foreman "schedule[d] work operation" and "dispatch[ed] all work crews on a daily basis," as the job

15

description explains, he did so according to the instructions and priorities imposed on him by the Street Superintendent. Amend. Compl. Ex. A, at 1.

Not only did the Muncie's Street Foreman lack discretion in implementing department policy, he also lacked involvement in the formulation of policy. In *Allen*, the Bureau Chief of Accounting and Auditing oversaw "the formulation of audit policies, procedures, and special examinations." 460 F.3d. at 945. In *Embry,* the Commissioner of Streets and Alleys met with the mayor and other department heads to develop new policies for improving city services. 701 F. 3d at 236. In this case, on the other hand, we have no indication that Muncie's Street Foreman was charged with developing or formulating any policies or procedures.

Finally, the Street Foreman was not an appointed position nor did it require a pledge of political patronage. *Cf. Embry,* 701 F.3d at 237 (appointing the Commissioner to an annual term); *Selch*, 5 F.3d at 1044 (requiring signed political clearance cards for employees). In fact, prior to accepting the position, Plaintiff expressed his concern about potential political ramifications and was reassured that because Street Foreman was not an appointed position, any political change in administration would have no effect on his job security. Amend. Compl. ¶ 17.

In short, the Plaintiff alleges that he lacked both the responsibility and discretion necessary for political loyalty to be an appropriate job qualification for his position. According to Plaintiff, the Street Foreman lacked authority to hire or fire his subordinates. *Id.* at ¶ 15. He lacked fiscal responsibilities, such as managing a budget and purchasing inventory, equipment, or supplies. *Id.* at ¶ 14. Although he would receive and investigate complaints from the public, he had lacked discretion to initiate corrective action. *Id.* at ¶ 13. Instead, he was directly supervised by the Street Superintendent from whom he received his work priorities and instructions. *Id.* The

16

Street Superintendent—not the Street Foreman—decided the priorities for regular work, and although the Foreman scheduled and dispatched the crews on a daily basis, it was done according to the priorities and instructions given by the Superintendent. *Id.* at ¶ 11–12; Amend. Compl. Ex. A, at 1. At this stage of the proceedings, we accept Plaintiff's plausibly pleaded allegations as true, leading us to conclude that the City of Muncie's Street Foreman is not a "policymaking" official and political loyalty is not a valid qualification for effective performance of his position. Accordingly, the City's motion to dismiss for failure to state a claim with respect to Plaintiff's § 1983 claim is DENIED.

## Conclusion

For the reasons stated above, the official-capacity claim against Dennis Tyler individually is dismissed as duplicative of the claim against the real party in interest, the City of Muncie. Plaintiff's allegation that Mayor Dennis Tyler's decision as a final policymaker led to a constitutional violation is sufficient to state a plausible *Monell* claim, defeating the City of Muncie's request to be dismissed from this action. Finally, Defendants have failed to demonstrate that party affiliation is an appropriate requirement for the effective performance of the Street Foreman position previously held by Plaintiff prior to his termination. For these reasons, we GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss.

IT IS ORDERED

Date: 06/25/2014

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

M. Edward Krause, III
COHEN GARELICK & GLAZIER
ekrause@cgglawfirm.com

Matthew L. Hinkle
COOTS HENKE & WHEELER
mhinkle@chwlaw.com

Cory Christian Voight
COOTS HENKE & WHEELER, P.C.
cvoight@chwlaw.com